UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BOBBY JOHNSON and TONI NELSON, ) ) Plaintiffs, ) ) v. ) ) WAL-MART STORES EAST, LP, and ) MTD, LLC, ) ) Defendants. ) | No.: 3:11-CV-469 (VARLAN/SHIRLEY) |

## MEMORANDUM OPINION

This civil action is before the Court on the Motion for Summary Judgment [Doc. 16] filed by defendants MTD, LLC ("MTD") and Wal-Mart Stores East, LP ("Wal-Mart"). The defendants argue that summary judgment is appropriate in this products liability case because plaintiffs cannot prove that the product at issue was defective or unreasonably dangerous as required by the Tennessee Products Liability Act. Notably, the plaintiffs have not responded to the pending motion and the time for doing so has passed. E.D. Tenn. L.R. 7.1(a), 7.2.

The defendants have filed a memorandum [Doc. 17] and a reply [Doc. 18] with documentation and case law in support of the pending motion. The Court has carefully considered the pending motion and related pleadings in light of the controlling law and the entire record. For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 16] will be **GRANTED** and this case will be **DISMISSED**.

**I.     Relevant Facts**

In 2010, plaintiff Bobby Johnson purchased a new Yard-Man lawn mower (or "lawn tractor"), Model Series 760-110, from Wal-Mart [Doc. 1-1 at ¶ 6].  Defendant MTD manufactures the Yard-Man lawn mower that was sold by Wal-Mart to the plaintiff [*Id*. at ¶ 7].  On June 1, 2010, plaintiff was operating the lawn mower when "[t]he gear slipped causing [p]laintiff to lose control of [the] lawnmower" [*Id*. at ¶¶ 10–11].  Plaintiff was thrown from the lawn mower causing him physical injury which required medical treatment [*Id*. at ¶¶ 9, 11].  Subsequently, while in Mr. Johnson's yard, plaintiff Toni Nelson was hit by the lawn mower and also suffered physical injuries which required medical treatment [*Id*. at ¶ 12].

Mr. Johnson testified that he has many years of experience operating riding lawn mowers, but does not know how the shifter mechanism connects to the transmission [Doc. 17-1 at p. 8].  He testified that he did not know how the throttle links to the engine, but assumed it was by a cable [*Id*. at p. 10].  Mr. Johnson did not know how the speed selector control worked, but just "put it in one through six or one through seven, whatever it had" [*Id*. at pp. 10–11].  Similarly, Ms. Nelson testified that she is also experienced in operating riding lawn mowers, but she does not know how the transmission of a riding lawn mower would operate or the mechanics of engaging the cutting blades on a riding lawn mower [Doc. 17-3 at p. 2].  She further testified that she does not know what needs to take place when the key turns to start the engine [*Id*. at p. 3].

2

According to the Affidavit of Daniel J. Martens, MTD's Vice President of Product Development and Safety, the lawn tractor at issue was designed by both mechanical and electrical engineers [Doc. 17-2 at ¶¶ 2, 10]. The lawn tractor is a complex piece of machinery with over one hundred component parts and multiple systems which all must function as designed and intended [*Id.* at ¶ 11]. The lawn tractor's individual component parts and systems are repeatedly tested to ensure that it will function as designed and intended [*Id.* at ¶ 12]. Further, the lawn tractor is designed and manufactured to ensure that it will comply with the requirements of the ANSI B71.1-2003 safety standard [*Id.*].

## II. Procedural History

The case was removed to this Court from Grainger County Circuit Court on September 29, 2011 [Doc. 1]. MTD served plaintiffs with a First Set of Interrogatories and Requests for Production of Documents on September 10, 2012, to which plaintiffs have not responded [Doc. 17-2 at ¶¶ 6, 8]. Plaintiffs have not made the initial disclosures required by Fed. R. Civ. P. 26(a)(1) and the Court's Scheduling Order [Doc. 5 at ¶ 3(c), Doc. 17-2 at ¶ 7]. Plaintiffs also have not made the expert disclosures required by Fed. R. Civ. P. 26(a)(2) and the Court's Scheduling Order [Doc. 5 at ¶ 3(e), Doc. 17-2 at ¶ 9]. As initially noted, plaintiffs have failed to respond to the pending motion for summary judgment and the time for doing so has expired. E.D. Tenn. L.R. 7.1(a). In short, it appears from this record that the plaintiffs have taken no action to prosecute their case since the filing of the complaint.

**III.    Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 324). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to

4

establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The plaintiffs' failure to respond to defendants' motion for summary judgment is not determinative of whether summary judgment is appropriate. *Aquent, LLC v. United States*, 2011 WL 1397105 at *1 (E.D. Mich. Apr. 13, 2011) (discussing the former version of Rule 56 and noting that "the non-movant's failure to respond does not relieve the movant of its burden to establish that 'the moving party is entitled to judgment as a matter of law'"); *Antczak v. Ashland Distrib. Co.*, 2011 WL 6887720 at *2–3 (E.D. Tenn. Dec. 29, 2011). Relevant to a party's failure to respond is Rule 56(e), which provides:

> (e) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> . . .
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

5

Fed. R. Civ. P. 56(e)(2); 56(e)(3).[1]  Accordingly, the Court has examined the motion and supporting materials to determine if summary judgment is appropriate.

## IV. Analysis

The bare allegations of the plaintiffs' complaint assert that this is a products liability action for a "defective product" arising from a slipped gear on plaintiff's lawn mower.[2]  Such actions are governed by the Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. §§ 29-28-101, *et seq.*[3]  In order to recover on a products liability action, plaintiffs must prove that the product allegedly manufactured or supplied by defendants was "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller."  *Johnson v. Volvo Truck Corp.*, 2010 WL 55317 at *2(E.D. Tenn. Jan. 4, 2010) (quoting Tenn. Code Ann. § 29-28-105(a)).

---

[1] The Advisory Committee Notes for the 2010 amendments indicate that the Rule was revised to preclude summary judgment from being granted by default, even "if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56 advisory committee's note (discussing when a party fails to properly address another party's assertion of fact as required by 56(c)).

[2] The introductory paragraph of plaintiffs' complaint also claims the action is for "breach of contract" [Doc. 1-1].  However, there are no factual or legal allegations in the complaint which would support a claim for breach of contract.  In the absence of any response or evidence supplied by the plaintiffs, the Court finds that no breach of contract claim has been asserted.

[3] The TPLA defines "[p]roduct liability action" to include "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn. Code Ann. § 29-28-102(6).  In addition, the TPLA states that a "'[p]roducts liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]" *Id.*

6

## A. Defective Condition

The TPLA defines a "defective" condition as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). "[T]he failure or malfunction of the device, without more, will not make the defendant liable. A plaintiff must show that there was something wrong with the product, and trace the plaintiff's injury to the specific defect." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) (citations omitted); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 299-300 (Tenn. Ct. App. 1995) (quoting *Browder v. Pettigrew*, 541 S.W.2d 402, 406 (Tenn. 1976) (the mere fact that an accident occurred is not sufficient to prove a defect); *Bradley v. Danek Med., Inc.*, 1999 WL 1866401 at *7 (W.D. Tenn. Mar. 29, 1999) ("Thus, regardless of the theory, the plaintiff must show that something is wrong with a product that makes it defective or unreasonably dangerous."). "Moreover, the fact that plaintiff was injured is not proof of defect." *Bradley*, 1999 WL 1866401 at *7; *Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 969 (E.D. Tenn. 2010) (finding that the plaintiff's allegations that he suffered an injury from a device does not, without more, show that the device was defective).

"A defect in a product may be proven by direct evidence, circumstantial evidence, or a combination of both." *Whaley*, 900 S.W.2d at 299-300 (citing *Browder*, 541 S.W.2d at 405). Thus, in addition to evidence of an injury caused by the product, a plaintiff must produce "additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction" or "the testimony of an expert

who has examined the product or who offers an opinion on the products [sic] design." *Id.* (citing *Browder*, 541 S.W.2d at 406). As noted in *Whaley*, expert testimony is necessary to demonstrate a defect in a piece of machinery because such knowledge is beyond the common knowledge of laymen. *Id.* at 301.

"The burden is on the plaintiff to identify a defect in the product." *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp.2d 1042, 1051 (E.D. Tenn. 2007). Here, the plaintiffs have presented no evidence, direct, circumstantial or expert, that the Yard-Man lawn mower was unsafe for normal or anticipatable handling and consumption. In the face of the defendants' motion, the plaintiffs have only the bare allegation of their complaint that the product was defective and Mr. Johnson's testimony that the lawn mower "wouldn't go in gear" [Doc. 17-1 at p. 5]. This minimal testimony of a failure or malfunction of the lawn mower is insufficient, without more, to show that the product was defective. Even accepting the plaintiffs' testimony that they both were experienced in operating riding lawn mowers, their testimony does not qualify as expert testimony as neither plaintiff could explain the tractor's inner workings or mechanisms. *See* Fed. R. Evid. 702. Thus, the plaintiffs have not met their burden to show that the product was defective.

    **B.**    **Unreasonably Dangerous**

The TPLA defines "unreasonably dangerous" as a product

> dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably

8

> prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102(8). Under the TPLA, there are two tests for determining whether a product is unreasonably dangerous. *See id.* § 29-28-102(8). The "consumer expectation test" requires a showing that "the product's performance was below reasonable minimum safety expectations of the ordinary consumer having ordinary, 'common' knowledge as to its characteristics." *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001). Under the "prudent-manufacturer test," the Court "imputes knowledge of the dangerous condition to the manufacturer, and then asks whether, given that knowledge, a prudent manufacturer would market the product." *Maness v. Boston Scientific*, 751 F. Supp.2d 962, 968 (E.D. Tenn. 2010). A plaintiff cannot prove that a product is unreasonably dangerous under the prudent manufacturer test without expert testimony. *Brown v. The Raymond Corp.*, 432 F.3d 640, 644 (6th Cir. 2005); *Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp.2d 852, 857 (M.D. Tenn. 2005), *aff'd* 484 F.3d 426, 429 (6th Cir. 2007).

MTD argues that plaintiffs cannot rely upon the consumer expectation test in this case because the test does not apply to highly complex products, such as the lawn mower at issue, about which an ordinary consumer would not have knowledge. *See Brown*, 432 F.3d at 644 ("the prudent manufacturer test will often be the *only* appropriate means for establishing the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation") (quoting *Ray by Holman v. BIC Corp.*, 925 S.W.2d 527, 531 (Tenn. 1996)); *Strayhorn v. Wyeth Pharms., Inc.*, 887 F. Supp. 2d 799, 821 (W.D. Tenn. 2012) (the

9

consumer expectation test "can only be applied to products about which an ordinary consumer would have knowledge") (also quoting *Ray*, 925 S.W.2d at 531); *Coffee v. Dowley Mfg., Inc.*, 187 F. Supp.2d 958, 968 (M.D. Tenn. 2002) (same). MTD relies on Mr. Martens' unrebutted testimony that the lawn mower at issue was designed by mechanical and electrical engineers and that the mower contains over one hundred component parts and multiple systems which must all function as designed and intended [Doc. 17-2 at ¶¶ 10–11]. Thus, based on the plaintiffs' testimony that they could not explain the mechanical functions of the lawn mower, MTD contends the mower is a complex product about which an ordinary consumer would not have knowledge [Doc. 17 at pp. 7–9]. Further, because plaintiffs have failed to offer any expert testimony or opinion as to the lawn mower's condition, MTD argues that they cannot prevail under the prudent manufacturer test [*Id.* at pp. 9–11].

After reviewing the record in the light most favorable to the plaintiffs, the Court finds that the plaintiffs cannot prevail under either theory. Plaintiffs have presented no proof of any kind in support of their claims and have failed to respond to the pending motion. The plaintiffs' complaint, even if accepted as true for purposes of summary judgment, consists of bare allegations which are not acceptable proof under Rule 56. Mere notice pleading is not sufficient to defeat a well-pled summary judgment motion. *See Garth v. Univ. of Ky. Med. Ctr.*, 1992 WL 133050 at *1 (6th Cir. June 16, 1992) ("To survive a motion for summary judgment, [the plaintiff] was required to do more than rest on her pleadings; she was required to demonstrate that a genuine issue for trial existed.") (citing *Anderson*, 477 U.S. at 248-49). There is simply no proof that the lawn mower's performance was below the

10

reasonable minimum safety expectations of an ordinary consumer having ordinary, 'common' knowledge as to its characteristics or that, if given knowledge of the mower's allegedly dangerous condition, a prudent manufacturer would not market the product. The plaintiffs have not presented any of the proof required to support a products liability claim under the TPLA. Accordingly, the Court finds that the defendants are entitled to summary judgment and the motion will be **GRANTED**.

**V.     Conclusion**

For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 16] will be **GRANTED** and this case will be **DISMISSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE